# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK, | Case No. 1:22-cv-00682-JLT-BAK (SAB) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS* AND REQUIRING PLAINTIFF TO PAY THE FILING FEE |
| v. | |
| PANERA BREAD COMPANY, | (ECF No. 3) |
| Defendant. | **FOURTEEN DAY DEADLINE** |

## I.

## BACKGROUND

Plaintiff Peter Strojnik ("Plaintiff"), proceeding *pro se*,[1] filed this civil action on June 6, 2022. (ECF No. 1.) The verified complaint asserts violations of (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq.; (2) the Unruh Civil Rights Act ("Unruh

---

[1] Although Plaintiff is currently proceeding *pro se*, he is a former Arizona attorney who is quite familiar with the judicial system. See Strojnik v. 1530 Mail LP, No. 3:19-CV-01326-E, 2020 WL 981031, at *1 & n.1 (N.D. Tex. Feb. 28, 2020) (stating Plaintiff was disbarred on May 10, 2019, and that his disbarment related, at least in part, to his conduct in filing thousands of ADA state and federal related lawsuits; see also Fed. R. Evid. 201(b) (allowing courts to take judicial notice of "generally known" facts or accurate and readily accessible facts from sources "whose accuracy cannot reasonably be questioned"); Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007) (noting that courts may take notice of "proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal citations and quotation marks omitted).

Act"), Cal. Civ. Code §§ 51–53; and (3) the Disabled Persons Act, Cal. Civ. Code §§ 54–54.3. Plaintiff did not pay the filing fee in this action and instead filed a long form application to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915 (ECF No. 3 at 1–5), supplemented by a "Verified Notice of Submission of Long Form IFP (Form AO 239) with Explanatory Notes" (ECF No. 3 at 6–10), all of which are currently before the Court.

## II.

## LEGAL STANDARD

The right to proceed without prepayment of fees in a civil case is a privilege and not a right. Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council, 506 U.S. 194, 198 n.2 (1993); Franklin v. Murphy, 745 F.2d 1221, 1231 (9th Cir. 1984) ("permission to proceed *in forma pauperis* is itself a matter of privilege and not right; denial of *in forma pauperis* status does not violate the applicant's right to due process").

In order to proceed in court without prepayment of the filing fee, a plaintiff must submit an affidavit demonstrating that he "is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). A plaintiff need not be absolutely destitute to proceed IFP, but his poverty must prevent him from paying the filing fee and providing himself and his dependents (if any) with the necessities of life. Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339–40 (1948). The Court is entitled to consider the economic priority Plaintiff placed on the use of his money, received from any source. Evans v. Sherman, No. 1:19-cv-00760-LJO-JLT (PC), 2019 WL 5377040, at *2 (E.D. Cal. Aug. 21, 2019) (citing Olivares v. Marshall, 59 F.3d 109, 112 (9th Cir. 1995)); see also Kurz v. Zahn, No. 1:11-cv-00342-EJL-MHW, 2012 WL 4458128, at *2 (D. Idaho Apr. 13, 2012) ("Nor can all the items included on her list of monthly obligations, even generously construed, be considered as the 'necessaries of life.' "). That is, when considering applications to proceed IFP, the Court is entitled to consider a plaintiff's economic choices about how to spend his money and whether he considered other expenditures more worthwhile than payment of a federal court's filing fee. See Olivares, 59 F.3d at 112 (quoting Lumbert v. Ill. Dept. of Corr., 827 F.2d 257, 260 (7th Cir. 1987) (noting peanut and candy "comforts" plaintiff purchased in the prison commissary: "if the inmate thinks a more worthwhile use of his funds

would be to buy peanuts and candy . . . than to file a civil rights suit, he has demonstrated an implied evaluation of the suit that the district court is entitled to honor.")).

Furthermore, "[i]t is the duty of the District Court to examine any application for leave to proceed in forma pauperis to determine whether the proposed proceeding has merit and if it appears that the proceeding is without merit, the court is bound to deny a motion seeking leave to proceed in forma pauperis." Smart v. Heinze, 347 F.2d 114, 116 (9th Cir. 1965) (citations omitted). Thus, in considering a motion to proceed IFP, "even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense, either frivolous claims or the remonstrances of a suitor who is financially able, in whole or in material part, to pull his own oar." Kuhne-Irigoyen v. Gonzalez, No. 1:18-cv-01011-DAD-SKO, 2018 WL 3816732, at *3 (E.D. Cal. Aug. 9, 2018) (citing Temple v. Ellerthorpe, 586 F. Supp. 848, 850 (D.R.I. 1984); Brewster v. N. Am. Van Lines, Inc., 461 F.2d 649, 651 (7th Cir. 1972)); see also 28 U.S.C. § 1915(e)(2) (court shall dismiss case at any time if it determines the allegation of poverty is untrue, or the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune).

Finally, whether to grant or deny an application to proceed without prepayment of fees is an exercise of the district court's discretion. Escobedo v. Applebees, 787 F.3d 1226, 1236 (9th Cir. 2015); see also U.S. v. McQuade, 647 F.2d 938, 940 (9th Cir. 1981) (the court has discretion to make a factual inquiry into a plaintiff's financial status and deny an IFP application if she is unable or unwilling to verify her poverty).

Based on his application and the judicially noticeable facts discussed herein, the Court concludes Plaintiff is not entitled to proceed without prepayment of fees in this action.

## III.

## DISCUSSION

### A.      Summary of IFP Application and Declaration

Here, Plaintiff's application reflects purported monthly expenses of $23,400.70, which far exceed his purported monthly income of $1,249.30. More specifically, the only source of income

3

1   Plaintiff claims is a monthly retirement of $1,249.30 (*i.e.*, annual income $14,991.60).[2]  (ECF No.

2   3 at 1–2.)  Where required to list his employment history for the past two years, Plaintiff states

3   "NA" and lists zero income.  (Id. at 2.)  Plaintiff identifies three checking accounts, which hold a

4   sum total of $53.72, and in the section designated to list any assets owned by Plaintiff and their

5   values, Plaintiff indicates he has no home, he has no motor vehicle, and his only assets are his HP

6   laptop and cell phone, collectively valued at $500.00.  (Id. at 2–3, 9.)  Meanwhile, Plaintiff claims

7   the following monthly expenses: rent/mortgage payments of $7,589.00; lease payments for a

8   2019 BMW 530e of $811.70; and alimony payments of $15,000.  (Id. at 4.)  Based on his

9   application, Plaintiff purportedly has zero expenses for utilities (which includes electricity,

10  heating fuel, water, sewer and telephone), home maintenance, food, clothing, laundry and dry-

11  cleaning, medical and dental expenses, transportation, recreation, entertainment, newspapers,

12  magazines, etc., insurance (including homeowner's or renter's, life, health, motor vehicle, and

13  "other"), taxes, or regular expenses for operation of business, profession, or farm.  (Id. at 4.)

14         In his "explanatory notes," Plaintiff's story begins in 1975, when he first married.  (ECF

15  No. 3 at 6.)  In 2013, Plaintiff divorced and through the marital settlement agreement was ordered

16  to pay $20,000 per month in spousal support for life.  (ECF No. 3 at 6.)  Apparently, the ex-wife

17  kept the house.  (See ECF No. 3 at 6–7.)  Per the same agreement, Plaintiff would continue to live

18  with his ex-wife and pay monthly "room and board" expenses of $7,589.00, which was calculated

19  on "fair market value."  (Id. at 6–7.)  Plaintiff lists this expense under the "rent or home-mortgage

20  payment" category, but maintains the expense "includes all subcategories [of expenses on the IFP

21  application]."  (Id. at 6–7.)

22         In 2016, Plaintiff decided to commence providing pro bono services to disabled clients.

23  (Id. at 7.)  He does not specify whether he provided only pro bono services at this time, or if he

24  provided services for regular paying clients as well.  Plaintiff also avers that from 2016–2017, he

25  represented disabled clients and donated all of his fees to a 501(c)(3) organization for the

26

27  _____
    [2] The IFP application provides various income sources which an applicant may report, including: employment, self-
28  employment, income from real property (such as rental income), interest and dividends, gifts, alimony, child support,
    disability, unemployment payments, public-assistance, and "other."  (ECF No. 3 at 1–2.)

                                                    4

disabled.   Thereafter,[3] Plaintiff purportedly chose to resign from the State Bar and agreed to "consensual disbarment" based on the "dysfunctional view of civil rights" held by the Arizona State Bar and Arizona Attorney General, and their nefarious "strategy" to file bar complaints with various ADA-offending public accommodations against Plaintiff.   (See id. at 7–8.)   At some unspecified time after his disbarment, Plaintiff vaguely avers his "financial condition deteriorated precipitously," and he "was unable to meet his spousal maintenance, room and board and tax obligations."   (Id. at 8.)   Plaintiff never identifies his salary pre-disbarment, nor does he specify how much his "financial condition deteriorated."   In any event, Plaintiff's income was apparently only affected insomuch that, on March 11, 2021, the family court reduced Plaintiff's monthly spousal payment amount from $20,000 to $15,000.   (Id. at 8.)

At some date which he does not specify,[4] Plaintiff "continued his civil rights work as a pro-se litigant in Arizona and California."   (Id. at 8; see also, e.g., Strojnik v. Express, LLC, No. 22-cv-00452-TWR-AHG (S.D. Cal. Apr. 4, 2022) (in his ADA complaint, Plaintiff refers to himself as an "ADA tester").)   But in late 2021, Plaintiff claims he dismissed all his pending cases due to contracting COVID-19 and needing to recuperate.   (ECF No. 3 at 9.)   Finally, as to his most recent finances (as of May 2022), Plaintiff supplements his IFP application with the following information on income and expenses: Between April 2021–2022, Plaintiff received $61,536.19 for previously-filed cases.[5]   (ECF No. 3 at 9.)   And Plaintiff avers current debts totaling over $1.5 million and consisting of: (1) spousal maintenance arrearages in the amount of $659,676; (2) room and board arrearages of $249,848; (3) an IRS Lien in the amount of $475,663; and (4) "various judgments [of] (at least)" $200,000.   (Id. at 9.)   Based on these debts, Plaintiff claims he is in "permanent insolvency status."   (Id.)

///

---

[3] As previously noted, judicially noticed facts indicate Plaintiff was disbarred on May 10, 2019.  The Court also notes Plaintiff does not account for his legal activity between 2018–2021.  (See ECF No. 3 at 7–8.)

[4] However, based on the Court's independent review, it appears Plaintiff commenced litigating ADA claims pro se at least as early as October 2018.  See, e.g., Strojnik v. Green Tea, LLC, No. 1:18-cv-00403-LEK-KSC (D. Haw. Oct. 22, 2018).

[5] Plaintiff claims this amount is significantly less than the costs associated with non-settled and dismissed cases, but declines to elaborate with cost estimates or dismissal statistics.  (Id. at 9.)

**B.     Application Inconsistencies Warrant Denial of IFP**

From a commonsense standpoint, Plaintiff's application is rife with internal inconsistencies that are not sufficiently explained, even with Plaintiff's "explanatory notes." The Court first addresses Plaintiff's comment that his room and board expense "includes all subcategories [of expenses on the IFP application]." (Id. at 6–7.) This statement is problematic because there are no subcategories of expenses on the IFP application for "rent or home-mortgage payment." Indeed, a plain reading of the form application reveals that the only categories which contain subcategories are the expenses for "insurance" and "installment payments."[6] (Id. at 4.) The fourteen remaining discrete categories of expenses set forth in the application are as follows: (1) utilities; (2) home maintenance; (3) food; (4) clothing; (5) laundry and dry-cleaning; (6) medical and dental expenses; (7) transportation (not including motor vehicle payments); (8) recreation, entertainment, newspapers, magazines, etc.; (9) insurance (not deducted from wages or included in mortgage payments); (10) taxes; (11) installment payments; (12) alimony, maintenance, and support paid to others; (13) regular expenses for operation of business, profession, or farm; and (14) "other." (Id. at 4–5.) Notably, Plaintiff also claims expenses under the categories of "installment payments, motor vehicle" (lease payments for a 2019 BMW 530e in the amount of $811.70 per month); and "alimony" in the amount of $15,000.00 per month, which suggests that not all "subcategories" of expenses are included in the "room and board" figure as Plaintiff averred. (Id. at 4.) Therefore, it is unclear which other expense categories, if any, Plaintiff intends to claim as "included" in his "room and board" payments of $7,589.00.

Other inconsistencies include: (1) Plaintiff's averment to have zero medical or dental expenses, despite the litany of issues detailed in the complaint setting forth Plaintiff's purported disability and treatments thereto (compare ECF No. 3 at 4 with ECF No. 1 ¶ 2);[7] (2) Plaintiff's

---

[6] The "Insurance" category contains the subcategories of (a) homeowner's or renters; (b) life; (c) health; (d) motor vehicle; and (e) other; whereas the "installment payments" category contains subcategories of (a) motor vehicle; (b) credit card; (c) department store; and (d) other. (Id. at 4.)

[7] Per the complaint, "Plaintiff suffers from physical impairments including a missing right knee, spinal stenosis, long Covid 19 pulmonary embolism, pleurisy, arthritis and cancer" as well as "secondary impairments of limited flexion and tibio-femoral rotation in the right knee," and has treated such impairments "with a prosthetic knee, nerve blocking and medications, respectively." (ECF No. 1 ¶ 2.) Plaintiff also avers that he was hospitalized in late 2021 when he contracted COVID. (ECF No. 3 at 9.) Plaintiff does not explain how any of his medical costs were covered.

averment that he started providing pro bono services to his disabled clients in 2016, whereas he also indicates he charged fees of these same clients, which were donated to charity (see ECF No. 3 at 7);[8] (3) Plaintiff's request in the verified complaint for "costs and expenses and lawyer's fees should Plaintiff hire a lawyer," even though Plaintiff avers in the IFP application that he has not spent, nor will he be spending, "any money for expenses or attorney's fees in conjunction with this lawsuit" (compare ECF No. 1 ¶¶ 29(e), 35(c) with ECF No. 3 at 5); (4) Plaintiff's claim of zero transportation expenses — such as for gasoline to fuel his leased 2019 BMW 530e — despite the fact that Plaintiff lives in Phoenix, Arizona and allegedly "often visits the area where [Defendant Panera Bread Company's stores] are located," i.e., in Bakersfield, Palm Desert, and El Centro, California (compare ECF No. 3 at 4 with ECF No. 1 ¶¶ 8, 12);[9] and (5) Plaintiff's failure to indicate any employment or income (including self-employment) for the past two years, despite his allegation in the complaint that the purpose of his visit to Defendant's stores in

---

[8] Possibly, Plaintiff was referring to the fee portion of any settlement he obtained for his client, though this would imply Plaintiff was representing disabled clients on a contingency fee basis, rather than pro bono. Regardless, this appears to be yet another internal inconsistency with Plaintiff's application.

[9] This claim is particularly dubious in light of the sheer distance Plaintiff would be required to traverse in order to visit each of the three Panera locations identified in the complaint. More specifically, Plaintiff references the Panera stores located at (1) 4108 California Ave, Bakersfield, California 93309; (2) 34180 Monterey Ave., Palm Desert, California 92211; and (3) 2321 S. 4th Street, El Centro, California 92243, and alleges he visited the first two stores on March 18, 2022, and the third store on April 26, 2022. (ECF No. 1 ¶¶ 8, 12.) Even assuming the most efficient and economical routes for those two dates, the Court takes judicial notice of the fact that the least possible mileage Plaintiff would incur during his travels from his home in Phoenix, Arizona to each of the stores and back would be 976 miles (a fifteen hours and eighteen minutes' drive) on March 18, 2022 (Phoenix to Bakersfield to Palm Desert, back to Phoenix), and 495 miles (a seven hours and forty minutes' drive) on April 26, 2022 (Phoenix to El Centro and back). Relatedly, the Court additionally notes that the Palm Desert Panera store is located in Riverside County, and the El Centro Panera store is located in Imperial County; therefore, these stores fall within the jurisdiction of the Central and Southern Districts of California, respectively. It is possible Plaintiff included these claims in the instant lawsuit because he has been declared a vexatious litigant (discussed in greater detail herein) in both the Central and Southern Districts of California, those courts have issued prefiling orders against Plaintiff which prevent him from filing frivolous ADA claims in those districts, and Plaintiff is attempting to circumvent those court orders by bringing the claims in the Eastern District of California, while simultaneously inflating the potential settlement value of his case. See Strojnik, Sr. v. SCG Am. Constr. Inc., No. SACV19-1560 JVS (JDE), 2020 WL 4258814 (C.D. Cal. Apr. 19, 2020) (declaring Plaintiff to be a vexatious litigant and requiring Plaintiff to obtain certification from the Chief Judge of the Central District of California that his claims are not frivolous or asserted for an improper purpose before being permitted to proceed on any ADA litigation in that district); Strojnik v. 1315 Orange LLC, No. 3:19-cv-01991-LAB-JLB, 2021 WL 4460767 (S.D. Cal. Sept. 24, 2021) (declaring Plaintiff to be a vexatious litigant and requiring Plaintiff to obtain certification from the court that his claims plausibly allege Article III standing and are not frivolous or asserted for an improper purpose before being permitted to proceed on any ADA litigation in the Southern District of California); see also, e.g., Express, LLC, 2022 WL 1394556 (rejecting complaint pursuant to Southern District's prefiling order and finding that the complaint failed to adequately allege Article III standing and was asserted for an improper purpose). In any event, however, Plaintiff's claims against Panera with respect to these two stores are not properly brought in the Eastern District of California and would be subject to dismissal for improper venue.

California was "to conduct business there," as well as his averment that he received $61,536.19 between April 1, 2021 and April 1, 2022 for his recently-dismissed ADA cases (compare ECF No. 3 at 1–2 with ECF No. 1 ¶¶ 8, 12 and ECF No. 3 at 9).[10]

The Court additionally cannot help but express some incredulity at Plaintiff's averment to have *no* income within the past two years, particularly in light of the March 11, 2021 family court order which only decreased Plaintiff's alimony payments based on "changed circumstances" from $20,000 to $15,000 per month, rather than reducing the payments more significantly or terminating them entirely, as would be expected if Plaintiff was demonstrably insolvent. (Compare ECF No. 1–2 with id. at 3 at 4, 6, 8); see also, e.g., Nace v. Nace, 107 Ariz. 411, 413 (1971) (discussing court's continued jurisdiction over divorce to subsequently modify spousal support order; noting criteria for determining modification of support amount is based on the financial circumstances of the parties); Amadore v. Lifgren, 245 Ariz. 509, 513 (Ct. App. 2018), as amended (Oct. 18, 2018) (quoting Ariz. Rev. Stat. Ann. § 25-327) (an award of spousal support "may be modified or terminated only on a showing of changed circumstances that are substantial and continuing."); Richards v. Richards, 137 Ariz. 225, 226 (Ct. App. 1983) ("The changed circumstances alleged must be proved by a comparison with the circumstances existing at dissolution."); McClendon v. McClendon, 243 Ariz. 399, 401 (Ct. App. 2017) (quoting Scott v. Scott, 121 Ariz. 492, 494 (1979)) ("The burden of proving changed circumstances is on the party seeking modification.").

Furthermore, the Court finds Plaintiff's application is also inconsistent with several judicially-noticed facts.  Significantly, Plaintiff's averment of having no employment and no income within the past two years appears to be inconsistent with prior statements of reported income made by Plaintiff in his other ADA cases.  For example, a court in the District of Arizona observed that as of January 2021, Plaintiff settled thirteen of his cases filed in Arizona for a net

---

[10] Perhaps, Plaintiff does not consider his ADA-testing to constitute a form of self-employment, though Plaintiff never makes such an argument and the Court declines to speculate.  Regardless, even if Plaintiff's ADA-testing was construed to be elective passion rather than profession, Plaintiff's decision to become "permanently insolvent" by continuing to pursue fruitless litigation rather than obtain some other form of gainful employment is, as discussed further herein, an economic choice the Court is entitled to consider in evaluating Plaintiff's IFP application. Olivares, 59 F.3d at 112.

profit of between $75,000 and $100,000, depending on whether the court "accepted Mr. Strojnik's claimed 'initial expenses' beyond fees and service costs as legitimate." Strojnik v. Driftwood Hosp. Mgmt. LLC (Driftwood), No. CV-20-00343-PHX-DJH, 2021 WL 50456, at *8 (D. Ariz. Jan. 6, 2021), order amended on reconsideration, No. CV-20-01532-PHX-DJH, 2021 WL 2454049 (D. Ariz. Jun. 16, 2021), aff'd, No. 21-16060, 2022 WL 1642234 (9th Cir. May 24, 2022), and aff'd as amended, No. 21-16060, 2022 WL 1642234 (9th Cir. May 24, 2022). Similarly, in the Northern District of California case, Strojnik v. IA Lodging Napa First LLC (IA Lodging), Plaintiff averred that — as of March 21, 2020 — fifty-seven (of one hundred and sixteen) ADA cases that were filed in California federal courts between December 10, 2018 and July 11, 2019 had been settled for a total amount of $249,079.00. IA Lodging, No. 19-cv-03983-DMR, ECF No. 56-1 at 8 (N.D. Cal. Mar. 21, 2020). While Plaintiff's March 21, 2020 statement of income appears to fall just outside the direct two year period implicated by the instant case, this Court finds the likelihood that Plaintiff continued to settle more of the remaining fifty-nine cases for a profit after his March 21, 2020 reporting date is strong. Indeed, a number of courts have recently rejected Plaintiff's averments of poverty and inability to pay, based on this same evidence of settlement profits.[11]

Also of some note to the Court, in Strojnik v. Village 1107 Coronado, Inc. (Village 1107), during a civil contempt hearing on Plaintiff's refusal to pay an award of attorney's fees due to his alleged inability to pay, the court held Plaintiff in contempt based on the finding that Plaintiff had the ability to pay fees in the amount of $22,551.00. Village 1107, No. 19-cv-02210-BAS-MSB, ECF No. 45 at 2 (S.D. Cal. Jun. 15, 2021). Although the court ultimately reversed its contempt finding on the basis that the proper recourse was to execute on the final judgment rather than seeking civil contempt, it did not alter its substantive findings as to Plaintiff's finances and ability to pay. See id. at ECF No. 62 (S.D. Cal. Dec. 21, 2021) (noting "Mr. Strojnik's lack of candor is repugnant," and "Mr. Strojnik is not credible, is concealing his substantial income, and can pay

---

[11] See, e.g., Strojnik v. R.F. Weichert V, Inc., No. 20-cv-00354-VKD, 2022 WL 94924, at *5 (N.D. Cal. Jan. 10, 2022) (finding Plaintiff offered no evidence of his claimed indigency or insolvency and imposing prefiling bond in the amount of $20,000 for Plaintiff to proceed with his ADA litigation); Strojnik v. Kamla Hotels, Inc., No. 19-cv-02212-AJB-AHG, 2021 WL 3290438, at *3 (S.D. Cal. Jul. 30, 2021) (same); Strojnik v. Woodside Hotel Group, Ltd., No. 20-cv-03204-BLF, 2021 WL 1238038 at *1–2 (N.D. Cal. Feb. 9, 2021) (same).

the attorney's fee award," while granting reconsideration of the contempt order).  While not bound by them, this Court nonetheless finds the determinations made by the courts in Plaintiff's other ADA cases to be persuasive for purposes of evaluating Plaintiff's claim of poverty.

In yet another example of inconsistencies between Plaintiff's purported indigency as set forth in the instant IFP application and other judicially noticeable facts, Plaintiff's averment that he dismissed all of his pending cases in late 2021 due to contracting COVID-19 (ECF No. 3 at 9) is belied by the fact that Plaintiff continued to litigate at least some cases in the California district courts in 2021; indeed, some of these cases remain open to this day.[12]  Nor can the Court accept Plaintiff's suggestion that he stepped away from *pro se* ADA litigation *only* due to illness.  While the Court acknowledges a number of Plaintiff's cases were dismissed in 2021 pursuant to Plaintiff's notice of voluntary dismissal or stipulation by the parties following settlement of the case, and this form of dismissal may, in fact, have been a consequence of Plaintiff contracting COVID in 2021,[13] a significant number of other cases were dismissed because the court ruled in the defendant's favor;[14] because the court ordered Plaintiff to post a costs bond before he would be permitted to pursue his litigation;[15] or because the court declined to retain supplemental jurisdiction over Plaintiff's state law claims,[16] and Plaintiff thereafter either voluntarily dismissed

---

[12] See, e.g., R.F. Weichert V, Inc., No. 8:20-cv-00062-JLS-DFM (C.D. Cal. 2020) (prosecuted through Feb. 14, 2022; dismissed for failure to post $20,000 bond); Strojnik v. Moraya Invests., LLC, No. 4:20-cv-01291-DMR JSW (N.D. Cal. 2020) (trial set for Oct. 31, 2022); Strojnik v. BW RRI II, LLC, No. 3:20-cv-03142-AGT (N.D. Cal. 2020) (OSC currently pending for failure to prosecute/comply with scheduling orders).

[13] Plaintiff's reference to contracting COVID in "late 2021" is vague, and it is unclear which cases Plaintiff may be referring to.  Nevertheless, the Court notes a number of cases were dismissed by Plaintiff in June 2021 or later.  See, e.g., Strojnik v. The Victus Grp., Inc., No. 1:18-cv-01620-AWI-SKO (E.D. Cal. 2018) (dismissed by Pl. Sept. 13, 2021); Strojnik v. JW World Enters., Inc., No. 1:19-cv-01096-DAD-JLT (E.D. Cal. 2019) (Mot. for Default J. granted Jun. 3, 2021).

[14] See, e.g., Strojnik v. Capitol Regency, LLC, No. 2:19-cv-01587-MCE-KJN (E.D. Cal. 2019) (mot. to dismiss Jun. 4, 2021); Strojnik v. Azul Hosp. Grp., LLC, No. 2:19-cv-01877-TLN-AC (E.D. Cal. 2019) (voluntary dismissal of Def. McConnell Found. Mar. 31, 2021; dismissed for failure to prosecute against remaining def. Jun. 9, 2021); Strojnik v. Lafayette Landlord, LLC, No. 3:20-cv-00387-TWR-AGS (S.D. Cal. 2020) (dismissed Sept. 3, 2021, for failure to file Am. Compl., following grant of def.'s mot. to dismiss).

[15] See, e.g., Kamla Hotels, Inc., No. 3:19-cv-02212-AJB-AHG (S.D. Cal. 2019) (dismissed Sept. 16, 2021, following failure to pay $20,000 bond).

[16] See, e.g., Strojnik v. Souldriver Lessee, Inc., No. 3:20-cv-00359-JAH-LL (S.D. Cal. 2020) (dismissed Jul. 28, 2021).

the actions or ignored the litigation until the court dismissed the case for failure to prosecute.[17]  It further appears to this Court that the most compelling reason as to why the number of Plaintiff's *pro se* ADA litigation filings significantly reduced between 2021 and the present is that Plaintiff was declared a federal vexatious litigant[18] "in view of his considerable history of unreasonable and frivolous conduct in ADA cases" and was prohibited from filing ADA actions without prior court approval in the Northern, Central, and Southern Districts of California, as well as the District of Arizona;[19] moreover, Plaintiff's subsequent attempts to file new ADA cases in those districts were rejected.[20]

On this record, the Court finds Plaintiff's application and verified supplemental statement too rife with internal inconsistencies to be deemed credible and shall recommend denial of IFP on this basis alone.  See, e.g., Salmeron v. Saul, No. 1:21-cv-00413-BAM, 2021 WL 2302724, at *1

---

[17] The Court notes, for purposes of the instant application, it has largely limited its search to cases filed in the California district courts, and the aforementioned references pertain only to cases filed by Plaintiff in California. However, the Court additionally acknowledges a PACER search for cases filed *pro se* by Plaintiff in Arizona revealed at least thirty-three cases that were closed (for various reasons) during 2021; Plaintiff has also filed multiple lawsuits in Oregon, Hawaii, and Texas.

[18] Under the All Writs Act, a district court has "the inherent power . . . to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances," including through the use of pre-filing orders.  De Long v. Hennessey, 912 F.2d 1144, 1147 (9th Cir. 1990).  It should be noted that prefiling orders like the ones issued against Plaintiff upon declaring him to be a vexatious litigant, are considered "an extreme remedy that should rarely be used" and must be "narrowly-tailored to the vexatious litigant's wrongful behavior."  Molski v. Evergreen Dynasty Corp., 500 F.3d 1047, 1057, 1061 (9th Cir. 2007).  Yet, the aforementioned districts determined such orders against Plaintiff were warranted due to Plaintiff's "[f]lagrant abuse of the judicial process," resulting in the "[preemption of] the use of judicial time that properly could [have been] used to consider the meritorious claims of other litigants."  De Long, 912 F.2d at 1148.

[19] See IA Lodging, 2020 WL 2838814 (Plaintiff declared a vexatious litigant by the Northern District of California on June 1, 2020); SCG Am. Constr. Inc., 2020 WL 4258814 (Plaintiff declared a vexatious litigant by the Central District of California on April 19, 2020); 1315 Orange LLC, 2021 WL 4460767 (Plaintiff declared a vexatious litigant by the Southern District of California on September 24, 2021); Driftwood, Nos. CV-20-01532-PHX-DJH, CV-20-00343-PHX-DJH, and CV-20- 01434-PHX-DJH, 2021 WL 50456 (Plaintiff declared a vexatious litigant by the District of Arizona on January 6, 2021).

[20] See, e.g., Strojnik v. Sashi Grp., LLC, No. 4:20-mc-80095-JSW (N.D. Cal. 2020); Strojnik v. Buffalo Wild Wings, LLC, No. 3:22-cv-00440-TWR-MDD (S.D. Cal. 2022) (on appeal, pending pl.'s mot. to dismiss or statement explaining why appeal is not frivolous and should go forward); Express, No. 3:22-cv-00452-TWR-AHG (same).  The pre-filing order issued by the District Court of Arizona, for example, provides Plaintiff cannot file an ADA case in the District of Arizona until after first obtaining leave of the court; any ADA actions that Plaintiff files in state court that are subsequently removed by the defendant must undergo an automatic screening before they may proceed; Plaintiff is required to post a $10,000 bond for all ADA cases filed in the district court within 21 days of filing or face dismissal; and if at any point the court determines Plaintiff fails to demonstrate standing or otherwise meet federal pleading requirements, the court will dismiss the case and initiate sanctions proceedings against Plaintiff pursuant to Federal Rule of Civil Procedure 11(b)(1).  Driftwood, 2021 WL 50456, at *10–11.

(E.D. Cal. May 11, 2021) (recommending denial of application where household income nearly doubled poverty guidelines and expenses reportedly greater than income were "inconsistent"); Badillo v. Comm'r of Soc. Sec., No. 1:20-cv-00393-SAB, 2020 WL 2494575, at *2 (E.D. Cal. May 14, 2020) (recommending denial of application where internal inconsistencies of reported income and expenses — including $1,500 per month for two cars and $1,000 per month for food in household of two — did not suggest plaintiff was living in poverty).

### C.    Plaintiff's Demonstrated Economic Priorities Warrant Denial of IFP

Nonetheless, even accepting Plaintiff's averments of "permanent insolvency status" to be true,[21] the Court also finds granting the IFP application unwarranted in this case in light of Plaintiff's demonstrated economic priorities.  As previously explained, in exercising its discretion to determine whether IFP status is warranted, the Court is entitled to consider the economic priority Plaintiff placed on the use of his money, received from any source.  Evans, 2019 WL 5377040, at *2; Olivares, 59 F.3d at 112; Kurz, 2012 WL 4458128, at *2.  Furthermore, courts in this district have denied applications to proceed IFP, even where the budget "appear[s] tight," if the itemized monthly expenses reflect at least some extent of discretionary spending beyond strict necessity.  See, e.g., Salmeron, 2021 WL 2302724, at *1 (recommending denial of application where household income nearly doubled poverty guidelines and expenses reportedly greater than income were "inconsistent"); Badillo, 2020 WL 2494575, at *2 (recommending denial of application where internal inconsistencies of reported income and expenses — including $1,500 per month for two cars and $1,000 per month for food in household of two — did not suggest plaintiff was living in poverty); Jones v. Comm'r of Soc. Sec., No. 1:19-cv-01049-SAB, 2019 WL 11234222, at *2 (E.D. Cal. Aug. 15, 2019) (recommending denial of application where household income nearly doubled poverty guidelines), report and recommendation adopted, No.

---

[21] And yet, the Court also notes an independent search for any pending or former bankruptcy actions filed by Plaintiff did not yield any results subsequent to Plaintiff's divorce in 2013, though the Court notes Plaintiff and his then-wife did file for bankruptcy under Chapter 7 once in 1993, Case No. 2:93-bk-05238-RTB (Bankr. D. Az. May 24, 1993). Further, while Plaintiff has designated himself with "permanent insolvency status," he does not aver he has been found legally insolvent by any institution.  Nor does Plaintiff indicate he currently receives any financial assistance from state programs or others, even though the IFP application expressly requires any such aid be acknowledged as income.  (See ECF No. 3 at 2 (identifiable "income sources" the applicant must report include disability, unemployment payments, public-assistance, and "other").)

1:19-cv-01049-DAD-SAB, 2019 WL 11234224 (E.D. Cal. Oct. 23, 2019).

Here, Plaintiff's application reflects monthly expenses significantly greater than his monthly income, yet the Court notes Plaintiff has chosen to lease a 2019 BMW 530e for $811.70 per month, rather than a more affordable vehicle; and he chooses to continue to live with his ex-wife in a house that a popular real estate website estimates is valued at almost $2.2 million,[22] and pay her "room and board" expenses — on top of her monthly alimony payment of $15,000 — in the amount of $7,589.00 per month, even though Plaintiff could certainly rent a more modest abode for a fraction of that cost.  These purported expenses do not suggest that Plaintiff is living in poverty, but rather suggest an ability to pay the $402 filing fee without sacrificing the necessities of daily life.  As this Court and others in this district have oft commented with respect to similar IFP applications:

> To be sure, the court is sympathetic to the fact that plaintiff does not have a "large" income, and also has several expenses to contend with.  However, numerous litigants in this court have significant monthly expenditures, and may have to make difficult choices as to which expenses to incur, which expenses to reduce or eliminate, and how to apportion their income between such expenses and litigating an action in federal court.  Such difficulties in themselves do not amount to indigency.[23]

Core v. Cal. Controllers Off., No. 2:18-cv-0155-MCE-KJN PS, 2018 WL 1569416, at *1 (E.D. Cal. Mar. 30, 2018) (denying IFP); see also Shoaga v. Nelson, No. 2:21-cv-1953-JAM-CKD, 2021 WL 5566747, at *1 (E.D. Cal. Nov. 29, 2021), report and recommendation adopted, 2021

---

[22] See ZILLOW "ZESTIMATE," www.zillow.com/homes/7847-N-Central-Ave-Phoenix,-AZ-85020_rb/71619720_zpid/ (last visited Jun. 16, 2022) (estimating home value for address listed in caption of complaint as Plaintiff's home address, 7847 North Central Ave., Phoenix, Arizona 85020, at $2,192,700.00).  While the Court does not rely on Zillow.com for this report and notes "Zestimates" are merely an estimated opinion of the market value of a property and not statements of fact — indeed, Plaintiff or his ex-wife could "log in to Zillow and add or subtract data that will change the value of his property," see, e.g., In re DaRosa, 442 B.R. 173, at *7 (Bankr. D. Mass. Nov. 17, 2010) — the Court merely comments on the apparent vast disparity between the estimated value of the residence at which Plaintiff has chosen to pay "rent" and the $402 filing fee which Plaintiff claims he is unable to pay, as it relates to the many other properly noticed facts considered herein.  But see, e.g., Harris N.A. v. U.S., No. 10 C 2352, 2011 Wl 833620 (N.D. Ill. Mar. 4, 2011) (considering home valuation on zillow.com in foreclosure case); Mulberry Homes VI, LLC v. Gargiulo, No. CV 15-1913 (DHR) (GRB), 2019 WL 5694133 (E.D.N.Y. Aug. 30, 2019) (judicially noticing various statements on Zillow.com for limited comparison purposes in deficiency judgment motion).

[23] This Court respectfully adds quotation marks to the characterization of the Shoaga and Core plaintiffs' incomes as "not large," where Shoaga's total net annual income was nearly five times the poverty guideline and Core's annual income was over three and a half times the poverty guideline.

1    WL 6052196 (E.D. Cal. Dec. 21, 2021) (same).

2          More significantly to this Court, however, are the financial choices Plaintiff has made

3    with respect to his litigation practices.  Plaintiff has branded himself a champion of the rights of

4    the disabled,[24] and even once famously stated that he donated over $1.2 million of his ADA fees

5    to a 501(c)(3) organization for the disabled.  See IA Lodging, 2020 WL 2838814 , at *7; but see

6    Kamla Hotels, Inc., No. 3:19-cv-02212-AJB-AHG, ECF No. 26-2 at 5 (S.D. Cal. Feb. 23, 2021)

7    (declaration indicating non-profit organization Plaintiff purportedly made donations to was

8    created by and associated with Plaintiff).  But Plaintiff's decision to give his income away, while

9    seemingly admirable and certainly within his prerogative, should not consequently require the

10   Court and taxpayers to bear the burden of paying Plaintiff's filing fee in the instant case, or future

11

---

12   [24] It should be noted, however, that countless courts have questioned Plaintiff's motives in pursuing his ADA
     litigations and whether he has a good faith basis for his claims.  See, e.g., Strojnik v. SCG America Construction Inc.,
13   No. 19-cv-1560, ECF No. 25 (C.D. Cal. Apr. 19, 2020) (declaring Plaintiff to be a vexatious litigant in the Central
     District of California).  In its order declaring Plaintiff to be a vexatious litigant and issuing a prefiling order against
14   him, for example, the District Court of Arizona commented:

15        Putting aside the fact that the ADA does not allow for damages, the fact that [Plaintiff] is requesting
          additional payment to abstain from visiting hotels is plainly a request that unjustly enriches him.  It further
16        undermines his professed purpose for advancing his ADA claims.  He has not incurred any damages or
          costs related to these other hotels, and so payment to not visit them is effectively a payment to prevent Mr.
17        Strojnik from self-inflicting further legal injury.  These efforts to coerce settlement are plainly at odds with
          our system of justice.  While the agreements require the other party's '[b]est efforts to remediate readily
18        achievable [ADA] remediations,' those efforts would not cover the hotels Mr. Strojnik promises to avoid.
          And in some settlements, this 'best effort' is not required at all.  Such limp efforts to bring about the
19        ADA's policy goals make Mr. Strojnik a lousy private attorney general.  The Court finds that Mr. Strojnik
          harasses and coerces parties into agreeing to extortive settlements.

20   Driftwood, 2021 WL 50456, at *10 (internal quotations and citations omitted).  The Southern District of California
     also expressed its consternation at Plaintiff's persistence in filing "duplicitous and frivolous complaints," even after
21   being declared a vexatious litigant and having prefiling orders entered against him by the Northern and Central
     District Courts of California:
22
          Strojnik claims to be a champion of disability rights—but a champion he most certainly is not.  The fact
23        that his complaints have overwhelmingly been dismissed or have settled very early on in the litigation
          indicates to the Court that he is aware he doesn't have a good-faith basis for bringing these claims, and yet
24        he does so anyway with the intention of harassing defendants and extorting settlements out of them.  The
          sheer number of deficient complaints filed by him has not only imposed a significant strain on the court
25        system, but it has also resulted in the harassment of numerous establishments across various jurisdictions.
          Strojnik is well aware that his frivolous lawsuits waste the courts' time and cause inconvenience to third
26        parties, and it is abundantly apparent that he simply doesn't care.  Strojnik's utter disregard for court
          orders and basic pleading requirements is nothing short of an abuse of the judicial process, and he
27        shouldn't be permitted to continue with his exploitative behavior.

28   Strojnik v. 1315 Orange Ave LLC, No. 3:19-cv-1991-LAB (JLB), 2021 WL 4460767, at *7 (S.D. Cal. Sept. 29,
     2021) (declaring Plaintiff a vexatious litigant and issuing pre-filing order).

1  ADA cases Plaintiff may choose to file in California district courts.[25]  By the same token,

2  Plaintiff's ongoing ADA crusade against various public establishments in California cannot now

3  be subsidized by the judicial system and the public.  In reaching this conclusion, the Court finds

4  an understanding of Plaintiff's litigation history is required, which the Court briefly summarizes

5  as follows:

6       As an attorney, Plaintiff represented disabled individuals in both state and federal court

7  and filed over 1,700 complaints in Arizona state courts.  See Strojnik v. IA Lodging Napa First

8  LLC, 2020 WL 2838814, at *3 (citing Arizona State Bar's "Order of Interim Suspension" and

9  summarizing Plaintiff's ADA litigation history).  Eventually, the Attorney General of Arizona

10  started to file motions to intervene on behalf of the State in some of Plaintiff's cases, such as

11  Advocates for Individuals with Disabilities, LLC v. 1639 40th Street LLC, Maricopa County

12  Superior Court Case No. CV2016-090506.   IA Lodging, 2020 WL 2838814, at *3 (citing

13  Advocates for Individuals With Disabilities LLC v. MidFirst Bank, 279 F. Supp. 3d 891, 894 (D.

14  Ariz. 2017).  The aforementioned case involved over 1,000 consolidated cases, all but one of

15  which were dismissed with prejudice for lack of standing.  Id.; see also Gastelum v. Canyon

16  Hosp., LLC, No. 18-16032, ECF No. 7-1 (9th Cir. Jun. 22, 2018) (State of Arizona's Motion to

17  Intervene in ADA case relating to Mr. Strojnik as plaintiff Fernando Gastelum's counsel).

18       Subsequently, the State Bar of Arizona opened an investigation into Plaintiff.  IA

19  Lodging, 2020 WL 2838814, at *3.  On July 11, 2018, it suspended Plaintiff's bar license because

20  of his conduct relating to ADA and state law disability litigation.  Id. (citing Order of Interim

21  Suspension at 4).  According to the State Bar of Arizona, the complaints in the cases filed by

22  Plaintiff were "all very similar, alleging vague and non-specific violations."  Id.  It found that

23

24  [25] Plaintiff expressly indicates in his IFP application that, "absent unforeseen circumstances, he has 10 good years left
to commence, continue and run new ventures."  (ECF No. 3 at 10.)  Based on his own prior statements, see
25  Driftwood, 2021 WL 50456, at *8 (Plaintiff refers to his pro se ADA lawsuits as "endeavors"), Plaintiff appears to
suggest he intends to continue filing ADA claims in this district for the next ten years.  Indeed, the Court notes
26  Plaintiff has already filed another ADA case in the Eastern District in which he applied for IFP status.  See Strojnik
v. Ross Stores, Inc., No. 1:22-cv-00533-DAD-BAK, ECF No. 6 (E.D. Cal. May 18, 2022).  While the court in that
27  matter granted Plaintiff's IFP application and an order screening Plaintiff's pro se complaint is currently pending,
this Court notes it is not bound by unpublished IFP determinations made in other cases and declines to find Plaintiff
28  qualifies for IFP status based solely on a determination made in another case, but will instead evaluate Plaintiff's
eligibility for IFP based on the facts asserted herein.

1    Plaintiff demanded large attorneys' fees in each case, regardless of whether the business remedied

2    the alleged violations.  Id.  In some cases, Plaintiff sued dirt lots or businesses that were not

3    subject to the ADA and hired people from Craigslist to take pictures of businesses that might be

4    non-compliant.  Id. (citing Order of Interim Suspension at 5).  The presiding disciplinary judge

5    determined that "[t]he evidence and testimony show that Mr. Strojnik is partaking in a scheme

6    that will cause imminent and substantial harm to the public and administration of justice."  Id.

7    (citing Order of Interim Suspension at 16).  On November 16, 2018, the State Bar of Arizona

8    filed a complaint against Plaintiff based on similar allegations relating to his disability litigation.

9    Id. On May 10, 2019, Plaintiff consented to disbarment.  Id.

10          Thereafter, Plaintiff began filing *pro se* ADA cases.  To this Court's knowledge Plaintiff

11   has thus far filed multiple cases in the Districts of Arizona, Oregon, and Hawaii, the Northern and

12   Southern Districts of Texas, and every district in California.  For example, the Northern District

13   of California noted that, as of June 1, 2020, Plaintiff had filed 114 ADA cases in California

14   district courts (34 in the Northern District, 24 in the Eastern District, 34 in the Central District,

15   and 22 in the Southern District).  IA Lodging, 2020 WL 2838814, at *7–9.  Of those cases,

16   exactly zero cases were tried on the merits; 20 of the cases were settled without the defendant

17   ever making an appearance; another 40 cases settled after the defendant made an appearance but

18   did not file a motion to dismiss; nine cases were dismissed and closed by the court; and the

19   remaining 41 cases remained pending at that time.  Id.  The District of Arizona similarly reported

20   that, as of December 19, 2020, Plaintiff claimed to have filed 64 cases with ADA claims in

21   Arizona superior courts, 14 of which were voluntarily dismissed, 13 of which settled, and none of

22   which were tried on their merits.  Driftwood, 2021 WL 50456, at *8.

23          In declaring Plaintiff to be a vexatious litigant on June 1, 2020, the Northern District of

24   California found that as early as 2017, courts in the Ninth Circuit have repeatedly

25   admonished Plaintiff for failing to allege a connection between ADA violations and a plaintiff's

26   particular disabilities, thus failing to establish Article III standing.  IA Lodging, 2020 WL

27   2838814, at *12.  Moreover, the court commented that

28                Strojnik's form complaint and generic opposition brief raise the

                                            16

1

> question of whether his pleadings are made in good faith or whether
> he is merely relying on the federal court's liberal policy of granting
> leave to amend.   The number of other, essentially identical,
> complaints he has filed in this district raise a concern
> that Strojnik files bare-bones complaints that do not meet pleading
> standards in order to pressure ADA defendants into settlements
> before the court can reach the merits of his claims. . . There are also
> strong indicia that defendants may be pressured into settling what
> might be meritless claims rather than incur the considerable time
> and resources required to retain counsel and mount a defense.

2

3

4

5

6

7   Id. at *11–12 (internal quotations omitted).

8        The District of Arizona similarly highlighted Plaintiff's practice of offering to settle

9   matters for monetary awards when it declared Plaintiff a vexatious litigant on January 6, 2021:

10

> In one letter to Defendant New Crescent Investments, LLC ("New
> Crescent"), Mr. Strojnik demanded to settle a suit for $22,850.00
> and offered to "sweeten the pot" for Defendant with a "no visit
> clause for an additional $5,000.00."  The offer does not require that
> Defendant fix every alleged ADA violation, only that it use "best
> efforts to remediate readily achievable remediations."
>
> . . .
>
> There is no doubt that Mr. Strojnik's history and his *modus
> operandi* are well known.  *See MidFirst*, 279 F.Supp.3d at
> 893 (describing attorney-Mr. Strojnik's ADA litigation tactics as
> "extortionate" and "pervasive," which included pursuing "upwards
> of 160 cookie-cutter lawsuits in federal court and, from early to
> later 2016, more than 1,700 such suits in Arizona state
> court"); *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F.
> Supp. 3d 1332, 1336 (E.D. Cal. 2020) ("Plaintiff Peter Strojnik . . .
> has filed thousands of disability discrimination cases against hotel
> defendants in state and federal courts, and this is one of those
> cases."); *Strojnik v. 1530 Main LP*, 2020 WL 981031, at *1 (N.D.
> Tex. Feb. 28, 2020) (noting that Mr. Strojnik, a *pro se* plaintiff, was
> disbarred partly for filing "thousands" of ADA lawsuits); *Strojnik v.
> Host Hotels & Resorts, Inc.*, 2020 WL 2736975, at *1 (D. Haw.
> May 26, 2020) (same).

11

12

13

14

15

16

17

18

19

20

21

22

23   Driftwood, 2021 WL 50456, at *3, 8.  Importantly, the court stressed the mere fact that Plaintiff is

24   a serial litigant is not what earned him the title of vexatious litigant; rather, it was Plaintiff's

25   practice of "[continuously making] exaggerated claims of injury with an intent to coerce

26   settlement" and using "the ADA not to vindicate the rights of disabled Americans, but rather, to

27   unjustly enrich himself."  Id. at 9.

28        While the vast majority of Plaintiff's cases appear to have resulted in a net profit from

1   settlement proceeds,[26] a small number of ADA defendants refused to settle and instead challenged

2   Plaintiff's claims on the merits, resulting in a string of unpaid judgments, tax liens and sanctions

3   issued against Plaintiff.  See, e.g., Driftwood, No. CV-20-00343-PHX-DJH, ECF No. 94 (D.

4   Ariz. Dec. 16, 2021) (awarding defendants $158,820 in attorney's fees and $970.78 in costs

5   against Plaintiff); Strojnik v. Portola Hotel, LLC, No. 5:19-cv-07579-VKD, ECF No. 39 (N.D.

6   Cal. Sept. 14, 2021) ($13,662 in attorney's fees); Strojnik v. Inn at Jack London Square, LLC,

7   No. 4:20-cv-0289-SBA (N.D. Cal. Jan. 28, 2021) ($17,850 in attorney's fees); Village 1107, No.

8   19-cv-02210-BAS-MSB (S.D. Cal. Jan. 25, 2021) ($21,995 in attorney's fees); Strojnik v. 1315

9   Orange Ave. LLC, No. 3:19-cv-1991-LAB (JLB) (S.D. Cal. 2019) ($11,400 in attorney's fees);

10  Strojnik v. 275 Orange Ave, LLC, San Diego Superior Court Case No. 37-2020-00026091-CU-

11  CR-CTL ($909.00 in costs); Strojnik v. Sashi Grp., LLC, Santa Clara Case No. 20CV367614

12  ($786.75 in costs); Strojnik v. Ayres – Paso Robles, LLC, San Luis Obispo Superior Court Case

13  No. 20CVP-0189 ($582.24 in costs).  The various judgments of "at least" $200,000 which

14  Plaintiff currently claims prevent him from affording the filing fee for the instant litigation, are

15  likely a reference to these fees and judgments previously assessed against Plaintiff in his

16  unsuccessful ADA litigations.  Yet, despite these losses and repeated court admonishments,

17  Plaintiff made the affirmative decision to continue to file defective ADA complaints, sometimes

18  resulting in further judgments and fees being issued against him.

19          In sum, of the thousands of ADA cases Plaintiff initiated across the western United States

20  prior to 2022 (and, in some cases, the subsequent appeals to the Ninth Circuit),[27] Plaintiff has

21

22  [26] See Driftwood, 2021 WL 50456, at *10 ("Even if the Court believed the financial information Mr. Strojnik
    provided in this case, there is enough information to make the inference that Mr. Strojnik has been making a large
23  profit from the hundreds of ADA cases filed across the country, cases that have never been tested on their merits.  In
    addition, his settlement offers usually request thousands of dollars in damages in exchange for a stipulated dismissal
24  with prejudice that only relates to the property in question—a promise to not visit Defendants' other hotels costs
    extra . . . .").

25  [27] An independent review by the Court revealed a handful of appeals to the Ninth Circuit following dismissal of
    Plaintiff's ADA case.  In every appeal of which this Court is aware, the Ninth Circuit affirmed the district court's
26  dismissal.  See, e.g., Strojnik Sr. v. Singpoli Group, LLC, No. 2:19-cv-00066-JLS-AGR, ECF No. 14 (C.D. Cal. Feb.
    14, 2019) (dismissed following failure to comply with order to show cause to correct defective service on defendant),
27  aff'd, No. 19-55310 (9th Cir. May 7, 2020); Strojnik v. Kapalua, No. 1:19-cv-00077-SOM-KJM (D. Haw. Sept. 25,
    2019) (dismissing federal claims with prejudice and declining to exercise supplemental jurisdiction over state law
28  claims), aff'd, No. 19-17110 (9th Cir. May 6, 2020); Strojnik Sr. v. Pasadena Robles Acquisition, LL, No. 2:19-cv-
    02067-AB-PJW, ECF No. 23 (C.D. Cal. Aug. 14, 2019) (granting mot. to dismiss ADA claim for lack of jurisdiction

18

always paid his own filing fee.  The Court does not see any reason to relieve Plaintiff of this obligation, particularly where the financial circumstances in which Plaintiff currently finds himself are of his own making, and may even become exacerbated by the Court if it were to enable Plaintiff's continued litigation tactics by passing the filing fee costs onto the public. Accordingly, the IFP application must be denied.

### D.      Frivolousness of Proposed Complaint Warrants Denial of IFP

The Court also finds IFP should be denied in this case due to the frivolity of the complaint.  As previously noted, the Court has an obligation to "assure that federal funds are not squandered to underwrite, at public expense, either frivolous claims *or* the remonstrances of a suitor who is financially able" to pay the filing fee.  Kuhne-Irigoyen, 2018 WL 3816732, at *3 (emphasis added); Temple, 586 F. Supp. at 850; 28 U.S.C. § 1915(e)(2); see also Smart, 347 F.2d at 116 (court must determine whether proceeding proposed by IFP applicant has merit); Wright v. Rhay, 310 F.2d 687 (9th Cir. 1962) (finding district court "was authorized to deny leave to proceed in forma pauperis at the outset if it appeared from the face of the proposed complaint that the action was frivolous.").  The Supreme Court, too, has confirmed it is appropriate for a court to consider this question *sua sponte* prior to issuance of process "so as to spare prospective defendants the inconvenience and expense of answering such complaints."  Neitzke v. Williams, 490 U.S. 319, 324 (1989).

A complaint is frivolous under 28 U.S.C. § 1915(e)(2) if it lacks an arguable basis either in law or in fact.  Denton v. Hernandez, 504 U.S. 25 (1992); Neitzke, 490 U.S. at 323–24.  As a

---

and declining to exercise supplemental jurisdiction over state law claims), aff'd, 19-56037 (9th Cir. May 7, 2020); Strojnik v. Four Sisters Inns, Inc., No. 2:19-cv-02991-ODW-JEM, 2019 WL 6700939 (C.D. Cal. Dec. 9, 2019) (same), aff'd, No. 19-56523 (9th Cir. Nov. 3, 2020) (summary affirmance); Strojnik Sr. v. Orangewood LLC, No. 8:19-cv-00946-DSF-GJS, ECF No. 43 (C.D. Cal. Jan. 22, 2020) (dismissing ADA claim with prejudice and dismissing state claims w/out prejudice to refiling in state court), aff'd, No. 20-55162, 829 F. App'x 783 (9th Cir. Dec. 9, 2020).  The Court also notes Plaintiff has at least two appeals currently pending before the Ninth Circuit in which he challenges the district court's refusal to permit him to proceed on his ADA case based on the pre-filing order currently issued against him in the Southern District of California, and the district court's finding in each case that the complaint does not allege Article III standing and is asserted for an improper purpose.  See Buffalo Wild Wings, LLC, No. 3:22-cv-00440-TWR-MDD, ECF No. 2 (S.D. Cal. Apr. 8, 2022), appeal pending, No. 22-55439 (9th Cir. May 26, 2022); Express, No. 3:22-cv-00452-TWR-AHG, ECF No. 2, appeal pending, No. 22-55443 (9th Cir. May 26, 2022).  In both cases, the Ninth Circuit commented the appeal "may be frivolous," and ordered Plaintiff to file either a motion to dismiss the appeal or a statement explaining why the appeal is not frivolous and should go forward, otherwise the court will dismiss the appeal for failure to prosecute.  Plaintiff's responses in both appeals are currently due June 30, 2022; as of the date of this order, Plaintiff has not filed any responses.

general rule, courts do not liberally construe the filings of disbarred attorneys.  See, e.g., Mann v. Boatright, 477 F.3d 1140, 1148 n.4 (10th Cir. 2007).  Nonetheless, whether or not the Court liberally construes his filings in this case, the Court would reach the same conclusion — that Plaintiff does not have Article III standing.

Plaintiff brings his *pro se* complaint against Defendant Panera Bread Company. According to the complaint, Plaintiff suffers from a litany of physical impairments, including a missing right knee for which he wears a prosthetic knee, a long COVID-19 pulmonary embolism, pleurisy, arthritis, and cancer.  (ECF No. 1 ¶ 2.)  Plaintiff visited three different Panera locations in California and determined they were each in violation of the ADA due to all of a combination of the following purported barriers: (1) the payment counter surface was cluttered with merchandise and equipment, (2) the food pickup counter was too high, and (3) the bathroom door required a push-pull force greater than 5 lbs.  (Id. at ¶¶ 14–16.)  Plaintiff concludes: (1) the barriers "relate to Plaintiff's Disability and interfere with his full and equal enjoyment of the Facilities because the barriers make it more difficult for Plaintiff to access the goods and services at the Facilities"; and (2) Plaintiff "will return to the Facilities to conduct business there only once he has been assured that the Facilities are accessible.  Plaintiff is currently deterred from doing so because of the existing barriers."  (Id. at ¶¶ 17, 19.)  Yet Plaintiff does not allege facts showing how the purported barriers affected him because of his disabilities.  Nor does he allege facts supporting his conclusion that he was "deterred" or demonstrating an intent to return.  See Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 n.4, 950 (9th Cir. 2011) ("a plaintiff's standing to claim an ADA violation is necessarily linked to the nature of his disability" and he "may establish injury for standing purposes by showing an "inten[t] to return to a noncompliant accommodation" or that the noncompliant accommodation deterred the plaintiff from visiting and the plaintiff "plans to visit [the] noncompliant accommodation in the future"); see also Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Trust (CREEC), 867 F.3d 1093, 1100 (9th Cir. 2017) (district courts make "case-by-case determinations about whether a particular plaintiff's injury is imminent" (citation omitted)).

Many courts, reading Plaintiff's many complaints, have seen the same boiler-plate

1  allegations and note Plaintiff's "longstanding practice of failing to allege basic facts about

2  standing, such as a connection between a barrier and [his] disability." <u>See</u>, <u>e.g.</u>, <u>Orangewood</u>

3  <u>LLC</u>, 829 F. App'x 783 ("The district court properly dismissed Strojnik's ADA claim for lack of

4  Article III standing because Strojnik failed to allege that the ADA barriers he identified affected

5  him because of his disabilities."); <u>see also</u> <u>Strojnik v. Hotel Circle GL Holdings, LLC</u>, No. 1:19-

6  cv-01194-DAD-EPG, 2019 WL 6212084, at *3 (E.D. Cal. Nov. 21, 2019) (holding Plaintiff's

7  photographs and captions, such as "security latch too high" to be bare legal conclusions

8  insufficient to show how there are purported barriers to his accessibility, and failed to allege facts

9  to explain how the barriers violated the ADA, related to his particular disability, or interfered with

10  his use and enjoyment of the hotel); <u>Four Sisters Inns, Inc.</u>, 2019 WL 6700939, at *3

11  (same); <u>1315 Orange LLC</u>, 2019 WL 5535766, at *2 (S.D. Cal. Oct. 25, 2019) (same); <u>IA</u>

12  <u>Lodging</u>, 2020 WL 2838814, at *5–6, *11 (Plaintiff failed to establish injury-in-fact because he

13  did not explain how the depicted features violated the ADA or posed a barrier to him based on his

14  disabilities); <u>Bakersfield Convention Hotel I, LLC</u>, 436 F. Supp. 3d at 1339–40 (no injury-in-fact

15  where grainy photos with captions, such as "more than 5 lbs to open," were conclusory and did

16  not establish how purported barriers related to Plaintiff's disability or limited his accessibility;

17  bare allegation that Plaintiff "is deterred from visiting the Hotel based on his knowledge that the

18  Hotel is not in compliance with the ADA and that he intends to visit the Hotel at a specific time

19  when the Hotel is in compliance" was conclusory); <u>Pasadena Robles Acquisition, LLC</u>, 801 F.

20  App'x 569, 570 (9th Cir. 2020) (affirming dismissal for lack of standing "because Plaintiff failed

21  to demonstrate an intent to return to defendant's hotel or that he was deterred from visiting

22  defendant's hotel.").   Here, Plaintiff's allegations are similarly deficient and do not show an

23  injury-in-fact.  He has therefore failed to establish Article III standing to bring his ADA claims,

24  rendering the complaint frivolous.  <u>Denton</u>, 504 U.S. at 25; <u>Neitzke</u>, 490 U.S. at 323–24.  For this

25  reason as well, IFP must be denied.

26  ///

27  ///

28  ///

**IV.**

**CONCLUSION AND RECOMMENDATIONS**

In sum, it appears Plaintiff's prior litigation tactics, while perhaps at one time very lucrative, are no longer so.  Nevertheless, if — even after being ordered to pay attorney's fees and other judgments to prior ADA defendants in an amount upwards of "at least" $200,000.00 — Plaintiff still desires to sue California businesses over purported ADA violations, that is his prerogative and currently still his right in the Eastern District.  The instant order does not purport to *sua sponte* declare Plaintiff to be a vexatious litigant, nor is there currently any prefiling order against Plaintiff with respect to filing ADA cases in the Eastern District of California.  However, this Court need not enable such filings leading to that eventuality by allowing Plaintiff to pursue this and future litigations for free — especially where Plaintiff's declaration of poverty is egregiously contradicted by internal inconsistencies and judicially noticeable facts, and the proposed complaint appears patently frivolous.  Again, the right to proceed without prepayment of fees in a civil case is a privilege, not a right.  <u>Rowland</u>, 506 U.S. at 198 n.2; <u>Franklin</u>, 745 F.2d at 1231.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's application to proceed *in forma pauperis* (ECF No. 3) be DENIED; and

2.      Plaintiff be ordered to pay the $402.00 filing fee in full in order to proceed with this action or face dismissal.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of issuance of this recommendation, Plaintiff may file written objections to the findings and recommendations with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

///

///

///

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 23, 2022**

UNITED STATES MAGISTRATE JUDGE